The STATE OF OHIO, Appellee,

v.

CLARK, Appellant.

[Cite as *State v. Clark* (1995), 107 Ohio App.3d 141.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95–CA–09.

Decided October 27, 1995.

142

*William F. Schenck,* Greene County Prosecuting Attorney, and *Robert K. Hendrix,* Assistant Prosecuting Attorney, for appellee.

*John H. Rion & Associates* and *John H. Rion,* for appellant.

FREDERICK N. YOUNG, Judge.

Appellant James E. Clark appeals from his conviction and sentence in the Greene County Common Pleas Court for aggravated burglary and felonious assault.

Clark advances three assignments of error. First, he claims the trial court erred by convicting him of two allied offenses of similar import. Next, Clark

contends his aggravated burglary conviction was against the manifest weight of the evidence. Finally, Clark argues his convictions must be reversed because he was denied a speedy trial.

Clark's appeal stems from his arrest following an incident at the home of Sharon Thompson on September 17, 1994. Clark's girlfriend, Melinda Jones, had arrived at Thompson's home at approximately noon to use the telephone. Jones had made her call and was preparing to leave when Clark arrived at the front door. As the two spoke through the screen door, Clark appeared upset and explained that he wanted to come inside and talk. Jones refused to let Clark enter, and she shut and locked the door. Clark then began pounding on the door and attempted to force his entry. Eventually, Clark abandoned the door and climbed through a screen window. As Clark entered the house, Thompson told Jones to run. Consequently, Jones fled into the back yard, and Clark pursued her with his hand concealed in his jacket. After Jones tripped in a hole, Clark landed on top of her and told Jones he was going to kill her. Clark then pulled a knife out of his jacket and cut Jones several times. As Clark and Jones struggled, Thompson appeared in the yard and heard Jones exclaim, "He is stabbing me!" A mutual friend of both Jones and Clark, Thompson demanded that Clark give her the knife, and he complied. Shortly thereafter, a Xenia police officer arrived, and Clark stated, "You are here to get me. I did it. Go ahead and take me."

A grand jury subsequently indicted Clark on September 23, 1994, for felonious assault, and his trial was set for November 21, 1994. Three days before his trial, Clark participated in a plea discussion with the prosecutor, during which the prosecutor told Clark that if he failed to enter a plea, the state would seek a new indictment, adding an aggravated burglary charge and a specification of a prior offense of violence. Clark declined to enter a plea, however. Consequently, Clark's November 21, 1994 trial date was continued, and the state obtained a second indictment on November 28, 1994. The new indictment repeated the felonious assault charge, adding the prior offense specification, and included an aggravated burglary charge, also with the specification.

On January 23, 1995, the day of his trial, Clark filed a motion to dismiss the charges against him, alleging that his speedy trial rights were violated. Following argument, the trial court overruled the motion. Shortly thereafter, a jury found Clark guilty on both counts, including the specifications. The trial court then imposed sentences of ten to twenty-five years with ten years of actual incarceration for the aggravated burglary conviction, and eight to fifteen years with eight years of actual incarceration for the felonious assault conviction. The court also ordered the sentences served consecutively.

Clark subsequently filed this timely appeal, in which he raises three assignments of error. Because resolution of Clark's second assignment of error impacts our analysis of his first assignment of error, we will address his second argument first.

## I

In his second assignment of error, Clark claims his aggravated burglary conviction was against the manifest weight of the evidence. Specifically, Clark contends he committed the "aggravating" element of his offense after the burglary ended.

The aggravated burglary statute, R.C. 2911.11, provides in part:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."

A review of this statute reveals that an offender commits aggravated burglary if he (1) by force, (2) trespasses, (3) in an occupied structure, (4) with the purpose to commit any felony, (5) when he inflicts, or attempts or threatens to inflict physical harm on another. The first four of these elements correspond with the requirements for simple burglary. See R.C. 2911.12(A)(1). However, the fifth element—inflicting, attempting, or threatening physical harm—elevates burglary to the more serious offense of aggravated burglary.

In the present case, Clark inflicted physical harm upon Jones in the back yard after she fled the house. However, Clark claims his burglary terminated when he exited the house in pursuit of Jones. Therefore, Clark argues, his conduct outside the house cannot constitute the aggravating element needed to raise his burglary to aggravated burglary.

In response, the state stresses that R.C. 2911.11 does not require the offender to inflict physical harm while committing a burglary. Rather, an offender fulfills the statute's requirements if he "inflicts, or attempts or threatens to inflict physical harm on another." R.C. 2911.11(A)(1). Moreover, the state also points

out that the aggravated burglary statute includes two other aggravating factors that justify his conviction under R.C. 2911.11. In particular, a burglary is aggravated if the "occupied structure" is a residence or if the offender enters the structure possessing a deadly weapon. The state concedes, however, that Clark was not charged with either of these aggravating circumstances, though evidence presented at trial proved each of them.

Although we agree that Clark *could* have been charged with either of the two aggravating factors identified above, we find this argument inconsequential. Regardless of what Clark *might* have been charged with, the state's indictment identifies only Clark's infliction, attempted infliction, or threatened infliction of physical harm as the conduct supporting an aggravated burglary conviction.

As a result, we next must consider the state's argument that R.C. 2911.11 requires only an attempted or threatened infliction of physical harm—not an actual infliction of physical harm—to sustain an aggravated burglary conviction. Once again, we agree with the legal proposition advanced by the state. An offender does commit aggravated burglary when he inflicts, attempts, or threatens physical harm in the course of a burglary. Moreover, a fair reading of the record supports the state's contention that Clark attempted or threatened to harm Jones physically while they both were inside the house. Nevertheless, we cannot accept the state's conclusion that Clark's attempt or threat elevated his crime from burglary to aggravated burglary.

A review of the jury instructions in this case reveals why. The trial court instructed the jury as follows:

"The Defendant is charged with Aggravated Burglary, a felony. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 17th day of September, 1994, and in Greene County, Ohio, the Defendant, by force trespassed in an occupied structure with the purpose to commit therein a felony and that at the time the Defendant inflicted physical harm upon Melinda Jones."

Clark properly notes that this instruction failed to inform the jurors that an aggravated burglary conviction may be predicated upon an offender attempting or threatening physical harm. Instead, the trial court instructed the jurors, without objection, that an aggravated burglary conviction requires a finding that Clark actually inflicted physical harm upon Jones during the burglary.

In *State v. Powell* (1991), 59 Ohio St.3d 62, 63, 571 N.E.2d 125, 127, the Ohio Supreme Court determined that "[t]he crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass of the defendant has not been completed." Consequently,

the aggravating element of the offense must be committed prior to the offender exiting the structure. Otherwise, the burglary cannot be aggravated.

In the present case, Clark inflicted harm upon Jones in the back yard. In light of *Powell*, however, Clark completed his crime of burglary when he exited the house. At that time, his trespass in the occupied structure terminated. Although he remained a trespasser on the property, his conduct no longer conformed to the requirements for aggravated burglary. Consequently, when Clark actually inflicted harm upon Jones, the burglary had terminated. Therefore, his infliction of physical harm outside the house cannot constitute the aggravating factor supporting an aggravated burglary conviction.

If the jury instructions had mentioned "threatening" or "attempting" harm as a basis for an aggravated burglary conviction, Clark's conduct in the house would have fulfilled the statutory requirements. Since they did not, however, we hold that Clark's conduct in the house constituted simple burglary. Thus, the trial court erred in sentencing him for aggravated burglary, and we sustain his second assignment of error.

## II

In his first assignment of error, Clark claims the trial court improperly convicted him of aggravated burglary and felonious assault. Specifically, Clark contends the two convictions violate R.C. 2941.25's prohibition against multiple convictions for allied offenses of similar import.

Having sustained Clark's second assignment of error, however, we need not consider whether aggravated burglary and felonious assault are allied offenses of similar import. Since Clark may be convicted only for simple burglary—not aggravated burglary—we must determine whether felonious assault and simple burglary are allied offenses of similar import.

R.C. 2941.25, the allied offenses statute, prohibits multiple convictions under certain circumstances. This provision provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225, the Ohio Supreme Court applied a two-step analysis to determine whether multiple crimes constitute allied offenses of similar import. First, the elements of the crimes are compared. " 'If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step.' " *Id.* at 434, 613 N.E.2d at 227 (quoting *State v. Blankenship* [1988], 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817). The second step involves reviewing the defendant's conduct to determine whether multiple convictions are proper. " 'If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.' " *Id.*

Consequently, we begin our analysis by reviewing the elements of burglary and felonious assault. The burglary statute, R.C. 2911.12, provides:

"(A) No person, by force, stealth, or deception, shall do any of the following:

"(1) Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense or any felony;

"(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present with purpose to commit in the habitation any misdemeanor that is not a theft offense;

"(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present."

A review of this statute reveals that an offender commits burglary if he (1) by force, (2) trespasses, (3) in an occupied structure, (4) with the purpose to commit any felony.

The felonious assault statute, R.C. 2903.11, provides:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

An examination of this provision reveals that an offender commits felonious assault if he (1) knowingly, (2) causes or attempts to cause, (3) physical harm, (4) to another, (5) with a deadly weapon.

After comparing the elements of burglary and felonious assault, we conclude that Clark's two crimes are not allied offenses of similar import. In essence,

burglary requires an unpermitted entry into an occupied structure. Felonious assault, on the other hand, requires the offender to cause or attempt to cause physical harm. The elements of these two crimes do not correspond to such a degree that commission of one offense results in commission of the other. Simple burglary, unlike aggravated burglary, has nothing to do with inflicting physical harm, and felonious assault need not occur in an occupied structure.

Consequently, we hold that the trial court could convict Clark for burglary based upon his conduct inside the house and felonious assault based upon his conduct in the back yard. These two convictions do not violate the allied offenses statute.

Accordingly, we overrule Clark's first assignment of error.

### III

In his third assignment of error, Clark claims his convictions must be reversed because he was denied a speedy trial pursuant to R.C. 2945.71.

Clark supports this argument by citing *State v. Adams* (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025, *State v. Clay* (1983), 9 Ohio App.3d 216, 9 OBR 366, 459 N.E.2d 609, and *State v. Wood* (1992), 81 Ohio App.3d 489, 611 N.E.2d 418. In each of these cases, the court held that when an accused waives his right to a speedy trial as to an initial charge, the waiver does not apply to subsequent charges arising from the same circumstances. Rather, as this court noted in *Wood*, "when new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge. Any other interpretation would clearly frustrate the purposes of the speedy trial statute." *Id.* at 492, 611 N.E.2d at 420. See, also, *Adams, supra,* at 68, 538 N.E.2d at 1026–1027; *Clay, supra,* at 216, 9 OBR at 366, 459 N.E.2d at 609.

In the present case, police arrested Clark on September 17, 1994. He was indicted for felonious assault on September 23, 1994, in case No. 94–CR–426. The trial court subsequently scheduled a trial date of November 21, 1994. On November 18, 1994, Clark attended a plea hearing and rejected a proposed plea agreement. As a result, his November 21, 1994 trial was continued, and the state obtained a new grand jury indictment on November 28, 1994. The new indictment charged Clark with felonious assault and aggravated burglary in case No. 94–CR–512. Each charge also included a specification of a prior violent felony. The new indictment's charges stemmed from the same incident as did the single charge contained in the first indictment. Prior to his trial, Clark filed a motion to

dismiss the charges against him, alleging a violation of his right to a speedy trial. The trial court denied Clark's motion, and his trial began on January 23, 1995. Clark remained in jail from his September 17, 1994 arrest until the trial began more than four months later.

Ohio's speedy trial statute, R.C. 2945.71, provides that a person accused of a felony and held in jail in lieu of bail must be brought to trial within ninety days. The speedy trial guarantee is " ' "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." ' " *Adams, supra,* 43 Ohio St.3d at 68, 538 N.E.2d at 1026–1027 (quoting *United States v. Marion* [1971], 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468). Furthermore, the availability of a speedy trial is a fundamental right, and it must be strictly enforced by Ohio's courts. *State v. Pachay* (1980), 64 Ohio St.2d 218, 18 O.O.3d 427, 416 N.E.2d 589, syllabus.

It is well settled, however, that a criminal defendant may waive his speedy trial right. *Adams, supra,* 43 Ohio St.3d at 69, 538 N.E.2d at 1027. The only requirement is that such a waiver be made knowingly, intelligently, and voluntarily. *Id.* In the present case, Clark waived his speedy trial right with respect to the original felonious assault charge in case No. 94–CR–426. As we stated above, however, this waiver cannot apply to subsequent charges arising from the same incident. In *Adams,* the Ohio Supreme Court explained the rationale underlying this rule. Writing for the majority, Justice Resnick stated:

"In the case before us, we do not find that appellant's waiver of his right to a speedy trial as to the original charge can be construed as a knowing and intelligent waiver of such a right as to the second charge. Although it is uncontested that the waiver was valid as to the first charge, appellant was neither advised nor knew that such waiver would apply to subsequent charges arising out of the same facts. Unaware that his original waivers could affect the course of a subsequent charge, appellant did not have sufficient knowledge of the consequences of his actions at the time he executed the waivers so that such actions could constitute valid waivers as to the right to a speedy trial on the second charge." *Id.,* 43 Ohio St.3d at 69, 538 N.E.2d at 1028.

The state attempts to distinguish the present case from *Adams, Wood,* and *Clay,* however, by stressing that Clark knew the prosecutors planned to seek a new indictment if he failed to enter a plea agreement. Consequently, the state contends Clark had knowledge that an additional charge was imminent. Moreover, the state claims it planned to pursue the new indictment before the original November 21, 1994 trial date. The state argues that it failed to do so only

·because Clark's attorney first requested a final opportunity to discuss a plea agreement with his client. The state further alleges that the prosecutors and Clark's attorney had a mutual understanding that if Clark rejected the plea, Clark's attorney would request a continuance of the November 21, 1994 trial date, and the state would pursue a new indictment.

 We find these arguments unpersuasive. Regardless of whether Clark knew that additional charges against him were possible, the state had an obligation to bring them in a timely manner. The state seems to suggest that, under the circumstances, Clark was not blind-sided by the new indictment, and, therefore, that no prejudice resulted. In fact, the prosecution raised this argument at trial, claiming Clark's motion to dismiss the charges should be overruled because he suffered no unfair surprise or prejudice. However, a defendant is not required to show that he was prejudiced by a delay beyond the time limits provided in R.C. 2945.71. *State v. Coatoam* (1975), 45 Ohio App.2d 183, 74 O.O.2d 229, 341 N.E.2d 635.

The state also contends, in effect, that the prosecutors were misled by Clark's attorney. As noted above, the state claims the prosecution agreed to a last-minute November 18, 1994 plea hearing with the understanding that if Clark failed to plead, the trial on case No. 94–CR–426 would be continued to allow the prosecutors to seek a new indictment. Thereafter, Clark did reject the plea agreement, and the trial on the first indictment was continued. However, we find no evidence in the record demonstrating that Clark's attorney agreed not to challenge the new indictment on speedy trial grounds. In fact, the record is devoid of any evidence concerning an "agreement" or "understanding" involving Clark's attorney and the prosecution. The record reveals only that the state threatened to reindict Clark if he failed to enter a plea. We find no justification for its failure to do so promptly. Consequently, we reject the state's arguments.

Following the failed plea negotiations, Clark moved to have his November 21, 1994 trial in case No. 94–CR–426 continued until January 23, 1995. On November 28, 1994, the state obtained a new indictment in case No. 94–CR–512. At Clark's January 28, 1995 trial the state had a *nolle prosequi* entered in case No. 94–CR–426, and the trial proceeded on case No. 94–CR–512. However, the charges in case No. 94–CR–512 arose from the same facts as the charges in case No. 94–CR–426. Consequently, case No. 94–CR–512 was subject to the same statutory speedy trial time limitations as case No. 94–CR–512. See *Wood, supra,* 81 Ohio App.3d at 491–492, 611 N.E.2d at 419–420.

Since Clark was not brought to trial in case No. 94–CR–512 within the statutory ninety-day period, we hold that the trial court erred in denying his motion to dismiss the *new charge* contained in the second indictment. Accordingly, his conviction for aggravated burglary was also in error on speedy trial

grounds as well as the grounds which support his first assignment of error. That charge should have been dismissed.

■ Our analysis does not end there, however. We must now consider whether Clark's conviction for felonious assault similarly is barred by the speedy trial statute and, if not, whether the specifications contained in the second indictment are proper.

In *Adams, supra,* the Ohio Supreme Court held that a defendant's speedy trial waiver as to an initial charge is not applicable to *additional charges* arising from the same circumstances. *Adams,* 43 Ohio St.3d 67, 538 N.E.2d 1025, at syllabus. In that case, as in the present case, the defendant was indicted on one charge, which later was nolled, and then indicted on a different charge. The court noted that the two charges—driving under the influence of alcohol and driving with an illegal breath-alcohol content—were related but could involve different defenses. The court explained that "a defendant, for tactical reasons, may choose to waive the right to a speedy trial as to an initial charge, but if a *nolle prosequi* is entered as to that charge, other defense considerations may arise which will affect his decision whether to waive the right to a speedy trial as to any subsequent charges stemming from the same set of circumstances." *Id.* at 69–70, 538 N.E.2d at 1027–1028. Indeed, a close reading of *Adams* reveals that the majority was motivated predominantly by its concern for the accused's ability to preserve defense options.

In *State v. Luff* (1993), 85 Ohio App.3d 785, 621 N.E.2d 493, the Lucas County Court of Appeals recognized the *Adams* court's concern about the impairment of an accused's defense. Nevertheless, the *Luff* court distinguished *Adams* and affirmed the conviction of a defendant under circumstances similar to those in the present case. In *Luff,* the appellant was indicted on five counts of aggravated murder, each with two death penalty specifications, and five counts of kidnaping. The appellant waived his speedy trial rights, and the case was continued for several months. More than six months after the original indictment, the state indicted the appellant again on identical aggravated murder and kidnapping counts. The new indictment included an additional death penalty specification and an additional aggravated robbery count, however.

Thereafter, the state entered a *nolle prosequi* in the first case because of the appellant's subsequent reindictment on the original and additional charges. The appellant then filed a motion to dismiss the second indictment, arguing that he never waived his speedy trial rights in that case. The trial court granted the motion in part and denied it in part. Specifically, the trial court dismissed the additional death penalty specification and the aggravated robbery count. However, the court rejected the appellant's motion as it related to the remainder of the

indictment. Consequently, the second indictment was identical to the original indictment, which had been nolled, except for the case number.

Under these circumstances, the Lucas County Court of Appeals concluded that the appellant's conviction under the second indictment did not violate Ohio's speedy trial statute. "Following the trial court's decision on Luff's motion to dismiss, the indictment in case No. CR–90–418 differed from the original indictment only in its case number," the appeals court explained. *Id.*, 85 Ohio App.3d at 797, 621 N.E.2d at 501. "Luff's ability to defend himself was not impaired through the application of his previous speedy trial waiver as he remained fully apprised of the charges against him." *Id.*

Similarly, in the present case, Clark's first indictment included a felonious assault charge. The new indictment restated the felonious assault charge, added an aggravated burglary charge, and included a prior violent offense specification with each charge. As we explained above, however, we must reverse Clark's conviction for aggravated burglary under the new indictment.

Consequently, Clark's first and second indictments differ in only two respects: (1) the case numbers are different; and (2) the second indictment includes prior violent offense specifications. Given that the violent offense specifications mandate a term of actual incarceration, and in recognition of the Ohio Supreme Court's pronouncement that the speedy trial right must be strictly enforced by the courts, we must dismiss the violence specifications. Their inclusion significantly alters the penalty for the offense.

However, we hold that the trial court did not err in failing to dismiss the felonious assault charge against Clark. As noted earlier, the Ohio Supreme Court held in *Adams* that "when an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to *additional charges* arising from the same set of circumstances that are brought subsequent to the execution of the waiver." (Emphasis added.) *Id.*, 43 Ohio St.3d at 70, 538 N.E.2d at 1028. In the present case, however, no *additional* charges remain. As in *Luff*, the felonious assault charge in case No. 94–CR–426 mirrors the felonious assault charge in case No. 94–CR–512. After dismissing the aggravated burglary charge and the specifications, the two cases differ only in case number.

Therefore, Clark's ability to defend himself was not impaired, and Clark's felonious assault conviction does not violate the speedy trial statute. See *State v. Gee* (June 2, 1994), Cuyahoga App. Nos. 64410 and 64411, unreported, 1994 WL 245885 (holding that when a "defendant is re-indicted for an identical charge, continuances under the first indictment are applicable to the reindictment and serve to toll the speedy trial statute with respect to the charge in the reindictment"). Accordingly, we sustain Clark's third assignment of error in part and overrule it in part.

Having sustained Clark's second assignment of error and, in part, his third assignment of error, we reverse the trial court's judgment, dismiss the aggravated burglary conviction and the two prior offense specifications, and remand the cause for sentencing on the felonious assault conviction.

The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.