OPINION
{¶ 1} Christopher Morris appeals from his conviction and sentence in the Court of Common Pleas of Clark County on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), including a firearm specification pursuant to R.C. 2941.145.
 {¶ 2} Morris advances the following two assignments of error on appeal:
 {¶ 3} "Appellant was denied due process and his right to a fair trial under the *Page 2 Sixth Amendment where he was tried for aggravated burglary without sufficient notice of the charges against him due to the state's failure to identify, either in the indictment or the bill of particulars, the underlying offense he allegedly intended to commit within the structure.
 {¶ 4} "Appellant's conviction and sentence for a three-year firearm specification was plain error because there was insufficient evidence that he displayed, brandished, used, or indicated he possessed a firearm while committing aggravated burglary."
 {¶ 5} Upon review of the record, we find that the trial court did not abuse its discretion in denying Morris's motion to dismiss. The indictment charging him with aggravated burglary under R.C.2911.11(A)(2) was not defective on its face simply because it recited the language of the statute. However, the evidence presented by the state was not sufficient to convict Morris of the three-year firearm specification under R.C. 2941,145, where the confrontation involving the revolver occurred after the defendant had exited the occupied structure. Accordingly, the judgment of the trial court will be affirmed in part, reversed in part, and the matter will be remanded for proceedings consistent with this opinion.
 {¶ 6} The present appeal stems from an incident that occurred during the evening of November 26, 2005. Approximately two days prior to the incident, the defendant, Christopher Morris, accompanied an acquaintance, Mike Algatus, to 1729 West Mulberry Street in Springfield, Ohio. There, Morris sat in the basement and played X-box with two of the occupants of the residence, Kevin Grider and Jeremy Baker, while waiting on Algatus. Two days later, on the afternoon of November 26, 2005, the defendant again went to the West Mulberry street residence, but this time he was alone. *Page 3 
According to the occupants of the house, Morris indicated that he was waiting on a ride from Algatus. Eventually, someone from the house had to call Algatus to come and pick up the defendant.
 {¶ 7} Later that same evening, Kevin Grider was in the basement of the home doing laundry and taking a nap. Grider testified that he was dozing in and out when he heard the back door leading to the kitchen being forced open and the door frame splintering and falling to the floor. Startled by the noise, Grider sat up and heard footsteps moving across the upstairs floor. He shouted,"What the fuck," in response to which the footsteps stopped.
 {¶ 8} Grider testified that he then heard the footsteps running across the floor. According to Grider, he ran up the stairs to the first landing from the basement, hit his head on the low ceiling, but continued up the stairs just in time to see the defendant running out the back door of the house, heading up the hill in the back yard and turning down an alley. At that point, Grider decided to run after him. About halfway up the hill, he attempted to call the police with the cell phone he always carries on his side, but because of the confusion and the"adrenaline" of the moment, he couldn't think of the address. Consequently, Grider told the dispatcher he would call back, and he hung up the phone.
 {¶ 9} Grider continued up the hill in pursuit of Morris. He turned down the alley and ran toward Catanzaro's Pizza and Subs on Dayton Avenue, approximately one block and one-half from the residence. There, he caught up with the defendant, who by then had stopped running and was hunched over trying to catch his breath. Grider testified that he ran straight at Morris and attempted to take a swing at him; however, *Page 4 
Morris ducked to the side. Grider was able to get a hold of Morris by the side, but the defendant freed himself by slipping out of the jacket and jersey he was wearing. Then, Morris picked up a gun from the ground and walked over to Grider saying,"Yeah, what now? Now what?" (Tr. at 189.) Grider described the gun as a chrome revolver with a slide on it. At that point, Morris grabbed his jacket and jersey from Grider, picked up one of his shoes that had fallen off during the confrontation, and fled across the street. Grider testified that he shouted to the defendant,"What? Are you going to shoot me? I already called the cops," but Morris continued to flee. Grider then called the police again and described what had happened.
 {¶ 10} Walking back toward his house, Grider noticed the hat Morris had been wearing lying on the ground. He picked it up and took it back to the house. Eventually, he gave the hat to the police officers when they arrived at the scene.
 {¶ 11} As a result of the foregoing incident, Morris was arrested and charged with aggravated burglary in violation of R.C. 2911.11(A)(2). This statute provides that"[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 12} "The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." Included with this charge was a firearm specification pursuant to R.C. 2941.145. In pertinent part, R.C. 2941.145 states that"[i]mposition of a three-year mandatory prison term upon an offender * * * is *Page 5 
precluded unless the indictment * * * charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 13} The matter proceeded to trial before a jury on June 27 and 28, 2006. On the morning of the trial, Morris filed a motion to dismiss the indictment for failing to specify the underlying criminal offense required of the aggravated burglary statute. The motion was filed in response to the state's filing a bill of particulars on June 26, 2006. The bill of particulars indicated the exact date, place, and time of the incident, but it failed to specify the underlying crime in which Morris was engaged at the time of the burglary.
 {¶ 14} After hearing arguments from the defendant and the state, the trial court overruled Morris's motion. The court relied on State v.Rivers, Cuyahoga App. No. 83321, 2004-Ohio-2566, to conclude that the state is not required to specify the criminal offense in either the indictment or the bill of particulars when a defendant is charged with aggravated burglary. The court also noted that appellate courts have found no error in a trial court's failing to instruct the jury on the specific underlying offense when there is an aggravated burglary charge. The trial court, however, chose to discern from the testimony of both sides what criminal offense Morris engaged in before instructing the jury as to such offense.
 {¶ 15} After the court ruled on the motion to dismiss, but before the commencement of trial, the state agreed to file an amended bill of particulars specifying the potential underlying offenses, and the defendant agreed to a continuance of the *Page 6 
case. The court rejected this proposal and proceeded to trial, again citing Rivers, supra, in support of its decision.
 {¶ 16} Following the presentation of evidence at trial, the jury convicted Morris of aggravated burglary with a firearm specification. The trial court subsequently sentenced him to ten years in prison for the burglary charge and three years for the firearm specification. The sentences are to run consecutively for a total of 13 years. It is from this conviction and sentence that the present appeal comes.
 I {¶ 17} In his first assignment of error, Morris argues that the indictment charging him with a violation of R.C. 2911.11(A)(2) and the bill of particulars specifying his conduct constituting the offense were defective because they failed to identify the underlying crime he intended to commit when he entered the residence at 1729 West Mulberry Street.
 {¶ 18} Preliminarily, we note that the standard of review for resolving this error is discretionary. Thus, on appeal, a trial court's finding that the defendant has been sufficiently apprised of the charges against him will not be reversed absent an abuse of discretion. SeeState v. Rivers, Cuyahoga App. No. 83321, 2004-Ohio-2566, at ¶ 7; Statev. Semenchuk (1997), 122 Ohio App.3d 30, 36, 701 N.E.2d 19. An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 19} Section 10, Article I of the Ohio Constitution provides that"no person shall *Page 7 
be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The Ohio Supreme Court has stated that an indictment serves two purposes: 1) it affords an accused with adequate notice and an opportunity to defend oneself by compelling the state to aver all material facts constituting the essential elements of the offense; and 2) it protects an accused from future prosecutions for the same offense by identifying and defining the offense. State v.Sellards (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781.
 {¶ 20} Furthermore, the supreme court has established that"the requirements of an indictment may be met by reciting the language of the criminal statute. See State v. Murphy (1992), 65 Ohio St.3d 554, 583,605 N.E.2d 884, 907. In Murphy, [the] court rejected the appellant's proposition that the indictment was defective because it failed to identify the precise type of conduct by which he violated R.C. 2911.01
(aggravated robbery) and 2911.11 (aggravated burglary). Citing State v.Landrum (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724, [the court] held that an indictment using the words of the applicable statute was sufficient to charge the defendant with these crimes." State v.Childs (2000), 88 Ohio St.3d 194, 199, 724 N.E.2d 781.
 {¶ 21} Here, the indictment against Morris states, in relevant part, that"CHRISTOPHER ALLAN MORRIS, on or about November 26, 2005, at Clark County, Ohio, did by force, stealth, or deception, trespass in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense when the offender has a deadly weapon or dangerous *Page 8 
ordnance on or about the offender's person or under the offender's control in violation of Section 2911.11(A)(2) of the Ohio Revised Code * * * ."
 {¶ 22} Morris claims that the indictment's failure to identify the crime he intended to commit within the West Mulberry Street residence violated his right to due process and his right to a fair trial under the Sixth Amendment to the United States Constitution. We find that this argument lacks merit. The indictment simply tracked the words of the aggravated burglary statute. As we stated above, indictments which track the language of a criminal statute are generally valid. State v.Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, at ¶ 26 (citations omitted).
 {¶ 23} Morris next argues that the bill of particulars received from the state was similarly insufficient, for it also failed to identify the underlying crime he intended to commit.
 {¶ 24} Crim.R. 7(E) provides that"[w]hen the defendant makes a written request within twenty-one days after the arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires."
 {¶ 25} " The purpose of a bill of particulars is to provide a defendant with greater detail of the nature and causes of the charges against him." State v. Silos (1995), 104 Ohio App.3d 23, 26, 660 N.E.2d 1239
(citation omitted). Generally, the state must reveal only specific information that goes to the essential elements of the crime charged in a requested bill of particulars. Sellards, 17 Ohio St.3d at 171. Moreover,"[a] bill of *Page 9 
particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." Id., citingState v. Wilson (1972), 29 Ohio St.2d 203, 58 O.O.2d 409,280 N.E.2d 915. However, an accused's right to due process and a fair trial may compel the disclosure of additional known information in a bill of particulars"`if the absence of specifics truly prejudices the accused's ability to defend himself.'"State v. Webb (1991), 72 Ohio App.3d 749,752, 596 N.E.2d 489, quoting Sellards, 17 Ohio St.3d at 172.
 {¶ 26} On appeal, Morris challenges the specificity included within the bill of particulars requested from the state, arguing that its failure to identify the underlying offense violated his right to due process and a fair trial. First, the record before this court does not include Morris's request pursuant to Crim.R. 7(E) for a bill of particulars from the state. Without such request, we have no basis from which to determine if the state sufficiently responded with the requested information. The record, however, does include the following bill of particulars from the state:
 {¶ 27} "* * * The language of the indictment is incorporated by reference herein. In addition, the following particulars of the offense charged are as follows:
 {¶ 28} "On or about November 26, 2005, at approximately 7:30 PM, the defendant forced entry into 1729 W. Mulberry, Springfield, Clark County, Ohio. Kevin Grider, an occupant of the residence, heard the commotion and went upstairs to investigate its cause. He observed the defendant, Christopher Morris, run out the back door. Mr. Grinder chased the defendant outside, having a physical confrontation with defendant prior to defendant taking out a firearm, pointing it at Mr. Grinder, stating,"
 {¶ 29} `Yea, now what.' Defendant then fled the scene on foot." *Page 10 
 {¶ 30} As we stated above, whether the bill of particulars provides sufficient detail of the nature of the charged offense is a matter within the discretion of the trial court. Here, the state's bill of particulars contained the exact date, time, and location of the charged offense, in addition to reiterating the language of the applicable statute and the conduct of Morris constituting the offense."While temporal information is generally irrelevant in preparing a defense, [the Ohio Supreme Court has held that] the state must, in response to a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." Sellards, 17 Ohio St.3d at 171. Thus, we do not find the court's decision here to be an abuse of discretion.
 {¶ 31} Next, we note that Morris did not raise this issue at the trial level. His motion to dismiss, which gives rise to this assignment of error, only contends that the indictment charging him with aggravated burglary was defective on its face for not including the crime which he intended to commit upon entering the occupied structure. In addressing the defendant's motion, however, the trial court raised the contention that a bill of particulars also is not required to identify the underlying offense. In support of its decision, the court citedState v. Rivers, Cuyahoga App. No. 83321, 2004-Ohio-2566.
 {¶ 32} In Rivers, the Eighth District Court of Appeals found that a bill of particulars reciting the aggravated burglary statute verbatim and adding the date, time and location of the incident was sufficient to notify the defendant as to the offense the state intended to prove. Id. at ¶ 22. According to the court, to include more, i.e., the underlying crime,"would allow the defense insight into the state's theory of the case, which is clearly not the purpose of the bill of particulars, * * *." Id. Quoting Sellards, supra, the court *Page 11 
provided that the purpose of a bill of particulars is to particularize the alleged conduct constituting the charged offense; it is not to provide the accused with specifications of evidence or to replace discovery. Id. at ¶ 20. The court further stated:
 {¶ 33} "We recognize that many are frustrated because they view a bill of particulars as a mere formality adding little information to the material facts of a particular case; however, a bill of particulars does serve its limited purpose, which is to give formal notice of the offenses charged so that the defense may prepare and avoid surprises or may intelligently raise alibi defenses, pleas of double jeopardy, or bar by the statute of limitations. In reality, defense attorneys often seek to use the bill of particulars as a `discovery' motion, while prosecutors consciously seek to limit responses to the formalized `date, time and location' of the alleged crime. We are fully aware that the real issue at the heart of this dispute is the discovery process." Id.
 {¶ 34} The trial court in the present matter applied this reasoning in its argument denying Morris's motion to dismiss. According to the court,Rivers, supra, stands for the proposition that a case may proceed to trial and a jury may determine at the end of the case whether the defendant intended to commit any criminal offense inside the structure. The bill of particulars, like the indictment, was not required to specify the criminal offense on which the state's argument would be based. Instead, the purpose of the bill of particulars in this case was to adequately provide notice to the defendant of his particular conduct, including details of the time, date and location, which the court held it did.
 {¶ 35} Based on the record before us, we do not find the trial court's attitude in this instance reaches the level of an abuse of discretion. The court was confronted with *Page 12 
this issue on the morning of trial, and it reasonably chose to rely on the holding in Rivers, supra, in order to avoid delaying Morris's case any further.
 {¶ 36} However, assuming, arguendo, that Morris made a valid request under Crim.R. 7(E) that the underlying offense be identified, we do not believe this would exceed the limited scope of a bill of particulars by infringing on the state's argument or taking the place of formal discovery.
 {¶ 37} The court in Rivers, supra, relied heavily on the fact that the majority of the case law on this matter limits a bill of particulars to identifying only the date and time of the alleged crime. Additional information, the court noted, may be relevant, but it must be sought through the discovery process. This limiting interpretation fails, however, to consider the cases in which a challenge as to the validity of an indictment is defeated by the presence of a bill of particulars containing such additional information as underlying offenses. SeeState v. Murphy (1992), 65 Ohio St.3d 554, 583, 605 N.E.2d 884
(overruling the defendant's claim that the indictment failed to identify the elements of aggravated burglary under R.C. 2911.11, where the bill of particulars supplied the information that the defendant claimed he lacked); State v. Skatzes 104 Ohio St.3d 195, 2004-Ohio-6391,819 N.E.2d 215, at ¶ 26 (overruling defendant's challenge of his indictment for failure to identify the elements of kidnapping under R.C. 2905.01(A), where the indictment tracked the language of the statute, and the bill of particulars identified the underlying felony); State v. Myers, Darke App. No. 1643, 2006-Ohio-1604, at ¶ 47 (overruling the defendant's argument that the indictment was defective because it failed to specify the underlying felony of the aggravated burglary statute, where the bill of particulars provided that the defendant"did purposefully, and with prior calculation *Page 13 
and design, cause the death of Jack L. Myers and Linda C. Myers," and that the defendant had trespassed in the Myers' home when they were present"with purpose to commit said unlawful killings"); State v.Ramirez, Clermont App. No. CA2004-06-046, 2005-Ohio-2662, at ¶ 50-51 (overruling the defendant's claim of a defective indictment charging him with aggravated burglary, where the indictment recited the language of the statute, and the state's bill of particulars provided that the defendant wielded a knife and threatened to kill the occupant of the trespassed structure). In each case, the information sought was freely submitted within a valid bill of particulars and not restrained behind the confines of the formal discovery process. Properly executed, a bill of particulars should put a defendant on notice of the precise nature of his conduct giving rise to the state's case against him. In situations where statutes such as R.C. 2911.11 are involved, identification of the exact time, date and place constitute only part of the information necessary to make a defendant aware of the circumstances surrounding the crimes he allegedly committed. Where a defendant makes a valid and specific request, due process requires that the particularized nature of the accused's conduct includes the behavior that demonstrates he committed an underlying offense.
 {¶ 38} Inasmuch as the indictment against Morris was valid on its face, we do not find the trial court abused its discretion in denying the defendant's motion to dismiss. Accordingly, Morris's first assignment of error is overruled.
 II {¶ 39} Under the second assignment of error, Morris contends that there was insufficient evidence with which to convict him of a firearm specification under R.C. *Page 14 2941.145, where the state failed to demonstrate that he displayed, brandished, used, or indicated he possessed a firearm while committing the aggravated burglary.
 {¶ 40} Morris admits that he did not raise an objection at trial pertaining to this issue; thus, he has waived all claims of error relative thereto except for plain error. State v. Wickline (1990),50 Ohio St.3d 114, 119, 552 N.E.2d 913; State v. Justice, Montgomery App. No. 21375, 2006-Ohio-5965, at ¶ 36. Plain error does not exist unless but for the error, the outcome of the trial would clearly have been different. State v. Long (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178,372 N.E.2d 804.
 {¶ 41} In order to demonstrate a violation of R.C. 2941.145, the state must prove that the offender had a firearm on or about his person or under his control while committing the offense and displayed thefirearm, brandished the firearm, indicated that he possessed thefirearm, or used it to facilitate the offense. (Emphasis added.) InState v. Powell (1991), 59 Ohio St.3d 62, 571 N.E.2d 125, the Ohio Supreme Court held that"[t]he crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass of the defendant has not been completed." Id. at 63. Pursuant to the court's holding in Powell, supra, we have found that the infliction of physical harm, an aggravating element under R.C.2911.11(A)(1), committed in the back yard of the burglarized, occupied structure does not support an aggravated burglary conviction because the trespass had terminated. State v. Clark (1995), 107 Ohio App.3d 141,147, 667 N.E.2d 1262.
 {¶ 42} Using this same logic in the present matter, we find that Morris has demonstrated plain error, where the state presented no evidence that he displayed, brandished, indicated that he possessed, or used a firearm to facilitate the offense. *Page 15 
Here, the state's witness, Kevin Grider, testified that Morris pulled a gun on him while the two men fought near Catanzaro's Pizza and Subs on Dayton Avenue. This encounter, however, took place after Morris had fled the residence on West Mulberry-approximately 1 1/2 blocks away. While circumstantially it may be reasonable for a jury to infer that Morris had the firearm in his possession while breaking into the residence, there was no evidence that he displayed the gun, brandished it, or used it to facilitate the offense. Thus, we find it was plain error to convict Morris of a three-year firearm specification under R.C.2941.145. Accordingly, we sustain his second assignment of error. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 43} Based on the foregoing, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
FAIN and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1