**[Cite as *State v. Shropshire*, 2020-Ohio-6853.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                                    :

    Plaintiff-Appellee              :    Appellate Case No. 28659

v.                                                          :    Trial Court Case No. 2019-CRB-2453

BRENDA SHROPSHIRE                     :    (Criminal Appeal from Municipal Court)

    Defendant-Appellant           :

          . . . . . . . . . . .

# O P I N I O N

Rendered on the 23rd day of December, 2020.

          . . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecuting Attorneys, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

FELICE HARRIS, Atty. Reg. No. 0064911, 6031 East Main Street, #187, Columbus, Ohio 43213
        Attorney for Defendant-Appellant

          . . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Following a bench trial, appellant Brenda Shropshire was convicted of criminal damaging. Because we find no merit in the asserted assignments of error, Shropshire's conviction will be affirmed.

**Facts and Procedural History**

{¶ 2} William Peterson and Shropshire were involved in a casual romantic relationship in the several months before May 2019. Peterson lived at an apartment complex which had security cameras monitoring the complex's outside areas. On May 20, 2019, Peterson was at home and his automobile was parked in the complex's parking lot. Sometime in the very early afternoon, Peterson left his apartment and, upon reaching his vehicle, he discovered that the tires had been punctured and the side view mirrors had been damaged.

{¶ 3} Upon this discovery, Peterson went to the complex's office to determine if the damage to his vehicle had been captured by a security camera. Peterson had to wait for the return of the complex manager, Kevin Beamon, who was away from the office during the lunch hour. This is noteworthy because, as he was leaving for lunch, Beamon observed two young black women running from the complex's parking lot toward a vehicle across the street from the apartment complex. Finding this suspicious, Beamon confronted the women and asked their purpose for being at the apartment complex. The women informed Beamon they were doing "nothing." After this brief encounter, Beamon continued to lunch.

{¶ 4} At Peterson's request, Beamon accessed the video footage, which depicted two young women damaging Peterson's automobile. Based upon the video time stamp, the two women began damaging the vehicle at 12:12 p.m., and this time was consistent

with the two women seen on the video being the individuals Beamon encountered as he left for lunch. However, Beamon could not identify Shropshire as one of the women who damaged Peterson's automobile.

{¶ 5} Peterson, on the other hand, testified that the women in the video were Shropshire and Shropshire's sister.[1] The State did not introduce the video at trial. Instead, the State introduced four screen shots taken from the video. Exhibit 1 consisted of two screen shots depicting the women as they were damaging Peterson's automobile. Exhibit 2 consisted of two screen shots depicting the women running from Peterson's automobile. The screen shots were not sufficiently clear to allow the identification of the women. Beamon testified that he could only create screen shots from the security video, but that the apartment complex's "main office" could retrieve the entire video and put it on a thumb drive.

{¶ 6} Shropshire was convicted of criminal damaging in violation of R.C. 2909.06(A), a second degree misdemeanor. Shropshire was sentenced accordingly, and this appeal followed.

## Analysis

{¶ 7} Shropshire's first assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT IMPROPERLY ADMITTED PREJUDICIAL TESTIMONIAL AND PHYSICAL EVIDENCE.

### Admission of Testimony Regarding the Content of the Security Video

{¶ 8} The first issue raised by Shropshire under the first assignment of error is that

---

[1] The record does not reflect whether Shropshire's sister was charged with criminal damaging.

the trial court, in the absence of the security video's admission, erred by allowing Peterson to testify concerning the content of the video.

{¶ 9} A trial court has broad discretion regarding the admission of evidence, and a "reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion." *State v. Montgomery*, 2d Dist. Montgomery No. 28404, 2020-Ohio-513, ¶ 16, quoting *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. The issue then is whether the trial court's admission of the contested evidence was unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 10} Citing to Evid.R. 1002, Shropshire asserts that the "best evidence" of the video's content was the video itself. Pointing to Beamon's testimony regarding how the video could have been obtained, Shropshire also argues that the State's failure to obtain and introduce the video was not excused under Evid.R. 1001, which states that the content of a recording may be introduced by other evidentiary means when the recording is not "available [through the use of a] judicial process or procedure * * *."

{¶ 11} Though acknowledging Evid.R. 1002 and Evid.R. 1004, we cannot conclude that the trial court's decision to allow Peterson's testimony was an abuse of discretion. Evid.R. 901(A) states that "[t]he requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The authentication threshold is low, meaning that the party seeking to introduce the disputed evidence need only demonstrate "a reasonable likelihood that the evidence is authentic." *State v. Yuschak*, 2016-Ohio-8507, 78 N.E.3d 1210, ¶ 16 (9th Dist.), quoting *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 6.

{¶ 12} Evid.R. 901(B) provides a non-exclusive list articulating how a particular evidentiary submission may be authenticated or identified. Evid.R. 901(B)(4) provides that an identification can be accomplished by "[a]ppearance * * * or other distinctive characteristics, in conjunction with [the surrounding] circumstances." Evid.R. 901(B)(5) states, in an analogous situation, that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, [may be accomplished] by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

{¶ 13} Based upon Beamon's testimony and the screen shots, the trial court knew that a video depicting the women who damaged Peterson's automobile existed and that Peterson had viewed the video. The trial court also realized that Peterson had been involved in a relationship with Shropshire, and thus would have been able to identify her upon viewing the video. In our view, under these circumstances, Peterson's video identification was consistent with an identification sanctioned by Evid.R. 901(B)(4) and (5). As such, we cannot conclude that the trial court abused its discretion by allowing Peterson to identify Shropshire from the video. This portion of Shropshire's first assignment of error is overruled.

**Admission of the Screen Shots**

{¶ 14} Shropshire also attacks the admission of the screen shots upon the basis of Evid.R. 1002. However, the screen shots were not the basis upon which Peterson identified Shropshire. Given this, their admission, even if in error, was harmless. This portion of the first assignment of error is overruled.

**Admission of Testimony Regarding the Content of a Text Message**

{¶ 15} During his direct examination, Peterson testified without objection that on May 20, 2019, he received a text message from Shropshire stating "I am gonna bust your windows and slash your tires."   The text message was not introduced into evidence.

{¶ 16} Shropshire asserts that the "best evidence" of the text message's content was the text message itself, and, as such, the trial court erred by allowing Peterson to testify about the message's content in the absence of the message's admission. Additionally, Shropshire argues that Peterson's testimony violated Evid.R. 804(B)(3).[2]

{¶ 17} As noted, Shropshire did not object to the admission of the content of the text message; therefore, we review for plain error.   Reversal of a trial court's judgment based upon plain error is reserved for the "most exceptional circumstances, and then only to avoid a manifest miscarriage of justice."   *State v. Brewer*, 2d Dist. Montgomery No. 23442, 2010-Ohio-3441, ¶ 14, citing *State v. Long*, 53 Ohio St.2d 91, 96, 372 N.E.2d 804 (1978).   Given this standard, reversal of a trial court's judgment "requires [a reviewing court] to conclude that, absent the plain error, the trial outcome would have been clearly different."   (Citation omitted.)   *Id.*   Even assuming error in the admission of Peterson's testimony about the text message, we cannot conclude that the outcome of her trial would have been different.   This portion of Shropshire's first assignment of error is overruled.

**Admission of Other-Acts Testimony**

{¶ 18} In the final portion of her final first assignment argument, Shropshire asserts

---

[2] Evid.R. 804(B)(3) states that a statement which tends to expose a declarant to criminal liability is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement."   But Evid.R. 804 sets forth hearsay exceptions which apply when the declarant is unavailable as a witness; thus, Evid.R. 804(B)(3) is simply not helpful to Shropshire.   Instead, Evid.R. 801(D)(2) applied, which provides that a party's statement offered against her is, by definition, not hearsay.

that the trial court erred by allowing Peterson to testify regarding an incident involving Shropshire which occurred on the morning of May 20. Shropshire argues that this testimony, which did not draw an objection, constituted other-acts testimony in violation of Evid.R. 404(B). We disagree.

{¶ 19} The contested testimony involved an incident between Peterson and Shropshire which occurred at a car wash. The relevant testimony was as follows:

[PROSECUTOR] Q. * * * On May 20th, where is the first place that you came into contact with Brenda Shropshire?

[PETERSON] A. On Gettysburg, at the carwash.

Q. And what were you doing at the carwash?

A. Getting my car washed.

Q. Ok. And was Brenda with you?

A. No.

Q. Ok. Did she - - did - - she just came on the property there?

A. She seen me and pulled up - - pulled down on me.

Q. Ok. And, so, she was in a vehicle?

A. Yes.

Q. Was she alone at that time?

A. No.

Q. Who was with her?

A. Her sister.

Q. And what's her sister's name?

A. I don't know her name.

Q. Alright. But you know her as her sister?

A. M-hum.

Q. Is that a yes?

A. Yes.

Q. Ok. What did Ms. Shropshire say to you, if anything, at that time, at the - - at the carwash?

A. Can you buy me a pack of cigarettes?

Q. And - -

A. I said yes. Gave her $10.00.

Q. Ok.

A. And she said, well, can I get some gas to put in the car. I said I aint got no more money to be giving you and she just split. Went in the back of my car, grabbed the tags out the window, jumped back in the other vehicle and took off.

Q. Ok. Did she - - were those tags to your vehicle?

A. Yes.

Q. Did she have any ownership interest? Did she own the car or anything like that?

A. What my car?

Q. Yeah.

A. No.

Q. Had you let her use the car?

A. No.

Q. So, really - -

A. I don't even let her in the car.

Q. So, no real reason to - - for her to take those tags at all?

A. In no way, shape or form.

Q. Ok. And what did you do when Ms. Shropshire took your tags to your car?

A. I sat there for a minute and then I went to her mother's house.

Q. Ok. And was - - is that where Ms. Shropshire was staying?

A. That's where her mother stays.

Q. Ok. And why did you decide to go to Brenda's mother's home?

A. To tell her mother and brother that she snatched my tags out of my car.

Q. And did you have that conversation with Brenda's mom?

A. M-hum.

Q. Yes?

A. Yeah. And her mom said call the police.

Q. Ok. And was Brenda there at that time?

A. She was sitting on the porch laughing.

Q. Did you call the police at that time?

A. Yes. I called the police and I - -and I left.

* * *

{¶ 20} Other-acts evidence which tends to establish a defendant has a particular character trait and acted in conformity with that trait is not admissible to suggest the defendant committed the crime at issue.  But other-acts evidence is admissible under

Evid.R. 404(B) when the evidence is relevant to an issue in the case, and the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice. *State v. Hartman*, Ohio Slip Opinion No. 2020-Ohio-4440, __ N.E.3d __; *State v. Russell,* 2d Dist. Greene No. 2020-CA-11, 2020-Ohio-5108, ¶ 7. The rule includes a non-exclusive list of legitimate reasons for the admission of other-acts evidence. This list includes an actor's motive for committing the crime at issue. The carwash incident suggested that Shropshire had a motive to damage Peterson's vehicle and, especially in light of the closeness in time between the two incidents, we cannot conclude that the probative value of the carwash testimony was substantially outweighed by unfair prejudice. Thus, the admission of the other-acts testimony was not error, let alone plain error. This final portion of Shropshire's first assignment of error is overruled, resulting in the entirety of the first assignment of error being overruled.

## Second Assignment of Error

{¶ 21} Shropshire's second assignment of error is as follows:

BRENDA SHROPSHIRE WAS DENIED HER CONSTITUTIONAL RIGHT TO A FAIR TRIAL AS A RESULT OF THE CUMULATIVE ERRORS AT TRIAL.

{¶ 22} The asserted cumulative error is based upon the already discussed evidentiary issues. Based upon our resolution of the evidentiary issues, Shropshire's cumulative error argument is without merit. The second assignment of error is overruled.

## Third Assignment of Error

{¶ 23} Shropshire's third assignment of error is as follows:

THE STATE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUSTAIN

BRENDA SHROPSHIRE'S CONVICTION FOR CRIMINAL DAMAGING.

{¶ 24} Shropshire states that the issue presented by this assignment of error is "[w]hether, excluding inadmissible evidence, sufficient evidence remains to support * * * Shropshire's conviction for criminal damaging." A sufficiency of the evidence analysis requires a reviewing court to review all of the admitted evidence, including evidence that was improperly admitted. *State v. Dillon*, 2016-Ohio-1561, 63 N.E.3d 712, ¶ 53 (2d Dist.). As Shropshire concedes, when all the admitted evidence is considered, the State submitted sufficient evidence to support the criminal damaging conviction. Shropshire's third assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 25} Shropshire's fourth assignment of error is as follows:

BRENDA SHROPSHIRE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 26} The issue Shropshire raises in this final assignment of error is "[w]hether * * * Shropshire was denied the effective assistance of counsel when [her attorney] failed to object to improperly admitted, prejudicial evidence." To establish ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient and that the deficient performance caused prejudice. *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Given our resolution of the asserted evidentiary issues, counsel's performance either was not deficient or it did not cause prejudice. Shropshire's fourth assignment of error is overruled.

# Conclusion

**{¶ 27}** All of Shropshire's assignments of error having been overruled, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Felice Harris
Hon. Christopher D. Roberts