[Cite as *State v. Bailey*, 2026-Ohio-481.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30429 |
| Appellee | : | |
| | : | Trial Court Case No. 24CRB001668 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| MALIA BAILEY | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 13, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

OPINION

ARVIN S. MILLER, Attorney for Appellant
ASHLEY THOMAS, Attorney for Appellee

EPLEY, J.

**{¶ 1}** Malia Bailey appeals from her conviction for assault, a first-degree misdemeanor, after a jury trial in the Dayton Municipal Court. She claims that the trial court erred in allowing the State to present a short video of the altercation and in excluding evidence of her past conflicts with the victim. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

**{¶ 2}** Eighteen-year-old Bailey and 17-year-old K.C. knew each other through a mutual friend: one of Bailey's closest friends was K.C.'s ex-boyfriend. The relationship between Bailey and K.C. was hostile.

**{¶ 3}** On the evening of May 31, 2024, K.C. co-hosted a birthday party for a friend in her backyard. The party was open-invitation, and a flyer for the event was posted on Instagram, a social media application. According to Bailey, the party was her graduation weekend, and she heard about it through her friends. She decided to go. Bailey testified that she arrived with her friends around 11:00 p.m. and was greeted at the back gate by K.C. and K.C.'s mother. In contrast, K.C. testified that she did not know that Bailey was there. Bailey was at the party for approximately 45 minutes without incident. Shortly before midnight, however, Bailey punched K.C. on the left side of her face as K.C. walked near her.

**{¶ 4}** On June 3, 2024, Bailey was charged by complaint with assault and aggravated trespass, both first-degree misdemeanors. Nine days later, Bailey filed a discovery demand,

which included a request for all video recordings related to the incident. On October 24, 2024, in anticipation of a November 21, 2024 trial date, the trial court issued a pretrial order, requiring, among other things, that discovery be completed by November 14, 2024. On November 7, Bailey filed a notice that she intended to argue self-defense at trial.

{¶ 5} Due to docket congestion, Bailey's November trial date was continued, sua sponte, and ultimately rescheduled for January 23, 2025.

{¶ 6} On January 16, 2025, Bailey filed a motion in limine, seeking to preclude the State from presenting at trial an 11-second video of K.C. walking among party guests then being punched from her left side. The video had been edited to include unflattering written commentary. In addition, it appeared to have been shared with the recipient during a video call, which was then screen-recorded. Bailey argued that the video was not a true and accurate depiction of the events and that its authenticity was questionable. She further raised that the State had disclosed the video on December 11, 2024, after the discovery deadline. Bailey acknowledged that the State had informed defense counsel that it had shared the video as soon as the video was received.

{¶ 7} The next day, the State filed its own motion in limine, asking the trial court to exclude, as irrelevant, evidence of prior interactions between Bailey and K.C. The State explained that defense counsel had indicated that the self-defense claim was based on something that had occurred about six months prior to the May 31, 2024 incident.

{¶ 8} On January 21, 2025, Bailey filed a second motion in limine to exclude a witness on the State's January 16, 2025 witness list who had not previously been disclosed.

{¶ 9} The trial court addressed the pending motions on January 23, 2025, prior to jury selection. Beginning with Bailey's second motion in limine, the State agreed that it would not call the newly-named witness, rendering the motion moot. As for the video, the court

3

indicated that it was not concerned about the late disclosure, considering that defense counsel had a month to review it, but it was concerned about the added text. After the court and the parties consulted with an information technology employee for the court, the employee suggested taping a sheet of paper over the monitor to conceal the text. The court tentatively ruled that the video could be admitted if the text were excluded.

{¶ 10} Turning to the State's motion in limine, the prosecutor highlighted that the notice of self-defense had identified two incidents: (1) an incident where an individual close to K.C. had requested delivery from Bailey's candy business, but K.C. had attacked Bailey instead, and (2) an incident where K.C. had left Bailey a voicemail threatening to slit her throat. The State emphasized that it had not heard any voicemail and that there was no indication when these events occurred. When the prosecutor followed up with defense counsel about the self-defense claim prior to trial, defense counsel said that the self-defense claim was based on an incident that had occurred approximately six months before the assault. The State argued that the events were not relevant because they did not reflect an imminent or immediate threat. In response, defense counsel acknowledged that the candy shop incident was in January 2024, but she stated that there had been ongoing harassment by K.C. for months, which resulted in Bailey's reasonable fear on May 31, 2024. The trial court concluded that Bailey could not testify to the specific instances, as they were irrelevant to Bailey's belief that she was in imminent danger, but that Bailey could testify that the two had had conflicts before.

{¶ 11} At trial, the State proceeded on the assault charge only, and the aggravated trespass charge was dismissed. K.C. was the State's sole witness. The State also presented the 11-second video, two screenshots from that video, and two photographs of K.C.'s bruised face taken within days of the altercation. Bailey testified in her own defense and

4

presented a screenshot of the party invitation. She told the jury that she had had physical interactions with K.C. in the past and had punched K.C. "to be the safest person I can be." She testified, "[A]s she walked up to me, I used the first act that I knew to try to defend myself. I didn't know what would happen due to past conflict incidents." On cross-examination, Bailey stated that she felt "uneasy" and "if anything was to happen I was cornered in."

{¶ 12} Before resting, the defense proffered the testimony and exhibits that Bailey would have presented about specific prior interactions with K.C.; the trial court did not allow this testimony to be presented to the jury. During the discussion of jury instructions, Bailey requested an instruction on self-defense. The trial court denied the request, reasoning that Bailey's testimony that she had hit K.C. because she felt uncomfortable did not reflect a reasonable objective fear of imminent harmful contact. After deliberating, the jury found Bailey guilty of assault. The trial court ordered a presentence investigation.

{¶ 13} At sentencing, the trial court imposed 180 days in jail with 179 days suspended and credit for one day already served, and it placed Bailey on 18 months of community control. The court ordered Bailey to pay a $250 fine with $150 suspended, plus court costs.

{¶ 14} Bailey appeals from her conviction, raising one assignment of error.

## II. Evidentiary Rulings

{¶ 15} Bailey's assignment of error states that "the trial court abused its discretion by usurping the province of the jury and depriving the defendant's right to a jury trial in ruling that evidence of specific acts between the defendant and complainant was not admissible and by also allowing the State to introduce an obviously edited video clip with insufficient evidence of authenticity."

5

{¶ 16} Bailey's arguments were first raised in the trial court through a motion in limine. A motion in limine is a tentative, interlocutory ruling by the trial court that reflects its anticipatory treatment of an evidentiary issue. *State v. Walters*, 2023-Ohio-2701, ¶ 25 (2d Dist.). Because the court is entitled to change its mind, finality does not attach when the motion is ruled upon. *State v. Edwards*, 2005-Ohio-6180, ¶ 17. To preserve the objection for appeal, the proponent must assert a timely objection at trial. Here, Bailey renewed her objections to the introduction of the video and to the exclusion of her evidence at trial. Trial Tr. 73-76, 90-94, 142-157. Accordingly, she preserved her claims of error for appeal.

{¶ 17} In general, the admission or exclusion of relevant evidence is within the sound discretion of the trial court, and we review that decision for abuse of discretion. *State v. Jali*, 2020-Ohio-208, ¶ 39 (2d Dist.). A trial court abuses its discretion if it makes an unreasonable, unconscionable, or arbitrary decision. *State v. Sutherland*, 2021-Ohio-2433, ¶ 23 (2d Dist.).

**A. Evidence of Prior Incidents between Bailey and K.C.**

{¶ 18} First, Bailey claims that the trial court abused its discretion in precluding her from presenting evidence of specific incidents between K.C. and her.

{¶ 19} When exercising its discretion regarding the admission of evidence, the trial court must determine if potential evidence is relevant. Relevant evidence is generally admissible, but irrelevant evidence is not. Evid.R. 402; *State v. Stone*, 2024-Ohio-177, ¶ 33 (2d Dist.). To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 402; Evid.R. 403(A).

6

{¶ 20} Bailey argues that the evidence of prior incidents was relevant to her claim of self-defense. Self-defense involving the use of non-deadly force requires evidence that (1) the defendant was not at fault in creating the situation giving rise to the altercation; (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that he or she was in imminent danger of bodily harm; and (3) the only means of protecting himself or herself from that danger was by the use of force not likely to cause death or great bodily harm. *State v. Wa Tenza*, 2026-Ohio-145, ¶ 13 (2d Dist.).

{¶ 21} In arguing for the admissibility of her evidence of prior confrontations between Bailey and K.C., Bailey acknowledged that she was not offering the evidence as proof that K.C. was the initial aggressor. *See State v. Barnes*, 2002-Ohio-68, syllabus ("A defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor."). She asserted, however, that the evidence was relevant to whether she believed that she was in imminent danger of bodily harm.

{¶ 22} We have long held that "a defendant asserting self-defense may testify about specific instances of the victim's prior violent or aggressive conduct which was known to the defendant in order to establish the defendant's state of mind." *State v. Eng*, 1994 WL 543277, *9 (2d Dist. Sept. 30, 1994); *see also State v. Fisk*, 2021-Ohio-1973, ¶ 26-29, *rev'd on other grounds*, 2022-Ohio-4435; *State v. Herron*, 2019-Ohio-3292, ¶ 28 (2d Dist.). Other Ohio appellate courts have held similarly. *E.g., State v. Cooperider*, 2003-Ohio-5133, ¶ 11 (3d Dist.) ("a defendant arguing self-defense may testify about specific instances of prior violent conduct by the victim to establish the defendant's state of mind at the time of the incident."); *State v. Brennan*, 2024-Ohio-4687, ¶ 91 (5th Dist.).

{¶ 23} In *Cooperider*, the Third District limited the prior instances to those that are "temporally and circumstantially connected to the facts of the offense alleged." *Cooperider*

7

at ¶ 16, citing *State v. Burson*, 38 Ohio St.2d 157, 159 (1974). In contrast, the Tenth District has held that there is "no such temporal limitation upon evidence of victim threats; the requirements are that they must have occurred, and the defendant must have been aware of them prior to the incident at issue." *State v. McLaughlin*, 2010-Ohio-1228, ¶ 14 (10th Dist.) (rejecting the trial court's position that the threats had occurred too remotely in time to have affected the appellant's belief that he was in danger).

{¶ 24} "[I]t is the trial court's province to determine whether, under the circumstances, testimony is 'essentially misleading or too remote' to be deemed relevant. Trial courts have 'broad discretion' in determining relevance." (Citation omitted.) *State v. Yarbrough*, 2002-Ohio-2126, ¶ 35; *see also State v. Fletcher*, 2024-Ohio-5117, ¶ 60 (2d Dist.). In the context of the State's presentation of Evid.R. 404(B) evidence, we have stated that other acts that are "too distant in time" lack probative value to the charged crime and thus the acts "'must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question.'" *State v. Walter*, 2023-Ohio-2700, ¶ 63 (2d Dist.), quoting *State v. Snowden*, 49 Ohio App.2d 7, 10 (1st Dist.1976), citing *Burson*, 38 Ohio St.2d at 159. We have further noted, however, that "[t]here does not appear to be any hard and fast rule in Ohio case law on the age of admissible threats made from an offender directly to a victim of violence." *State v. White*, 2015-Ohio-3512, ¶ 37 (2d Dist.). Threats made within months of an assault (or murder) have been found to have probative value, and we have found no abuse of discretion when the trial court allowed evidence of threats made more than year before a murder. *See id*.

{¶ 25} At trial, Bailey proffered that she had two violent encounters with K.C. in January 2024 and that K.C. sent her a threatening message in April 2024. Before the first

8

confrontation, K.C. had harassed her with text messages, egging her on to fight. The messages culminated in K.C. and Bailey meeting at an agreed-upon public location on January 3. Within a few days of that fight, Bailey received a voicemail from K.C. in which K.C threatened to cut her throat open and watch her bleed out. On January 12, 2024, K.C.'s aunt placed a candy order through Bailey's Instagram page for her home candy business, and when Bailey went to deliver the candy, K.C. emerged from her aunt's vehicle and attacked Bailey. On April 2, 2024, K.C. left Bailey a teddy bear with its head cut off outside of Bailey's home; attached to the bear were a voodoo message and witchcraft spells, Bailey's and other people's names, and a note that Bailey would have two weeks to live. Bailey testified that she reported the threat to the Miami Township Police Department. Bailey's proffer included copies of numerous text messages exchanged between K.C. and Bailey in January 2024 and a photograph of the teddy bear.

{¶ 26} On this record, we conclude that K.C.'s threatening conduct toward Bailey—the last of which occurred within two months of the party—was not so remote that they lacked relevance to Bailey's state of mind when she encountered K.C. at the party on May 31, 2024. The trial court erred when it precluded Bailey from testifying and introducing evidence specific instances of K.C.'s past threatening or violent conduct toward her.

{¶ 27} We nevertheless conclude that the error was harmless beyond a reasonable doubt. Crim.R. 52(A). Upon review of the evidence, the jury could not have reasonably concluded that Bailey acted in self-defense as the evidence established that Bailey was the initial aggressor on May 31, 2024, and at fault in creating the situation giving rise to the altercation.

{¶ 28} Bailey went to a party hosted by K.C. at K.C.'s residence. Although Bailey testified that she did not know that it was K.C.'s home, she stated that she was greeted at

9

the gate by K.C. and K.C.'s mother and that she was allowed to enter without paying $5, which other attendees were required to pay. For approximately 45 minutes, Bailey had fun with her friends in the backyard. Bailey stated that during that time, K.C. was walking around the backyard, but she did not approach or threaten Bailey.

{¶ 29} Bailey testified that she felt uneasy when K.C. headed in her direction and there was no way for her to exit before K.C. encountered her. However, there was no testimony that K.C. had acted aggressively or made any threats toward Bailey at the party. To the contrary, Bailey acknowledged that K.C. did not have anything (including any weapon) in her hand as she approached and that K.C. did not raise a fist to punch Bailey, jump on top of her, or "anything like that." The 11-second video showed that K.C. did nothing to instigate a violent encounter. Even if Bailey had been permitted to present additional evidence that she reasonably believed that K.C. posed a threat, the evidence at trial established that Bailey was the initial aggressor on May 31, 2024. Consequently, Bailey could not avail herself of a self-defense claim.

{¶ 30} The trial court did not commit reversible error when it precluded Bailey from presenting testimony regarding her interactions with K.C. in January 2024 and K.C.'s threat in April 2024, as well as her supporting exhibits.

### B. Video of the Assault (State's Exhibit 1)

{¶ 31} Bailey next claims that the trial court abused its discretion in allowing the State to introduce the 11-second video (State's Exhibit 1). She provides several bases for her argument: (1) the video was from an unknown Instagram account and was taken by an unknown individual; (2) the video was obviously edited with additional text and reduced to 11 seconds; (3) the video was not the best evidence and there was no attempt to obtain the original video; (4) the probative value was outweighed by the prejudice because the entire

event was not captured on video; (5) the video was superfluous as K.C. testified and it was undisputed that Bailey hit K.C.; and (6) the video was misleading "by unfairly focusing only on a single act and giving no context to the situation and the defendant's claim that it was done in self-defense." We distill these arguments into three categories: authentication, best evidence, and relevance.

*1. Authentication*

{¶ 32} Authentication is governed by Evid.R. 901. "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2011-Ohio-2068, ¶ 12 (2d Dist.); *State v. Hatfield*, 2022-Ohio-148, ¶ 84 (2d Dist.). "The authentication threshold is low, meaning that the party seeking to introduce the disputed evidence need only demonstrate 'a reasonable likelihood that the evidence is authentic.'" *State v. Shropshire*, 2020-Ohio-6853, ¶ 11 (2d Dist.), quoting *State v. Moorer*, 2016-Ohio-7679, ¶ 6 (9th Dist.).

{¶ 33} Evid.R. 901(B) provides examples of several ways that the authentication requirement may be satisfied. The most common method is oral testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *E.g., State v. Quarles*, 2015-Ohio-3050, ¶ 34 (2d Dist.).

{¶ 34} A video is treated like a photograph under Ohio's evidentiary rules. *See* Evid.R. 1001(2). Photographic evidence is admissible under two different theories. *State v. Pickens*, 2014-Ohio-5445, ¶ 150, *overruled on other grounds by State v. Bates*, 2020-Ohio-634; *State v. Davis*, 2021-Ohio-1833, ¶ 20 (2d Dist.). Under the "pictorial testimony" theory, the photographic evidence is "merely illustrative of a witness'[s] testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness'[s] personal observation."

*Pickens* at ¶ 150, quoting *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129 (1991). Alternatively, under the "silent witness" theory, the photographic evidence is a "silent witness" which "speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." *Id*., quoting *Midland Steel* at 130.

{¶ 35} In this case, K.C. was present at the party and testified as the complaining witness. The video was illustrative of her testimony. Thus, in accordance with the pictorial testimony theory, there was no need for the State to call a witness related to how the video was made or obtained. *Accord State v. Biswa*, 2022-Ohio-3156, ¶ 31-32 (2d Dist.); *compare State v. Entingh*, 2023-Ohio-2799, ¶ 27 (2d Dist.) (discussing the authentication of screen-recorded Snapchat videos through someone other than an eyewitness to the events depicted in the videos). Rather, it was sufficient for K.C. to testify that the video was a fair and accurate depiction of the event. *See Biswa* at ¶ 31-32.

{¶ 36} At trial, K.C. testified that the video showed what had occurred on May 31, 2024, and she identified herself in the video. She indicated that around the seven second mark, the video showed her being punched by Bailey. K.C. stated that the video was a "true and accurate depiction" of what happened on May 31, 2024, at her house. K.C. properly authenticated the video by testifying that it accurately displayed what had occurred.

*2. Best Evidence*

{¶ 37} Evid.R. 1002, which restates the traditional "best evidence rule," provides that to prove the contents of a writing, recording, or photograph, the original must be offered as evidence unless a foundation is laid for its non-production. *State v. Froman*, 2020-Ohio-4523, ¶ 100; *Verma v. Verma*, 2008-Ohio-6244, ¶ 31 (2d Dist.). However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the

duplicate in lieu of the original." Evid.R. 1003. A "duplicate" includes a counterpart produced by electronic re-recording. Evid.R. 1001(4).

{¶ 38} Duplicates are treated as originals and thus as the best evidence. *State v. Muhleka*, 2004-Ohio-1822, ¶ 66 (2d Dist.); 1980 Staff Notes, Evid.R. 1002 and 1003. Consequently, the party opposing the introduction of the duplicate as the best evidence has the burden of proving that there is a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicate. *Muhleka* at ¶ 66. We have previously noted that several Ohio appellate courts have permitted cell phone copies of surveillance videos under Evid.R. 1003. *Biswa*, 2022-Ohio-3156, ¶ 35 (2d Dist.) (citing cases).

{¶ 39} Bailey raised the best evidence rule, but there is nothing in the record to suggest that the original video was not authentic or that it was unfair to admit the duplicate. The trial court required the State to play the video in a manner that hid the added text, and the sound was muted. On this record, the trial court did not abuse its discretion in permitting the admission of the duplicate video recording.

*3. Relevance*

{¶ 40} Finally, Bailey argues that the video was unduly prejudicial and superfluous, as well as misleading to the jury. State's Exhibit 1 depicted Bailey punching K.C., seemingly without provocation or justification. Although the video cast Bailey in a negative light, it was highly relevant to whether Bailey had assaulted K.C., a fact that the State was required to prove beyond a reasonable doubt. Though the video was prejudicial to Bailey, just like most evidence presented by the State in a criminal trial, it was not *unduly* prejudicial. The State was entitled to use the video and the screenshots from the video, in addition to K.C.'s testimony, to prove its case. As to Bailey's argument that video did not show relevant events preceding the assault, that argument relates to the weight of the evidence, not its

13

admissibility. The defense could have provided a broader context through cross-examination or its own evidence.

**{¶ 41}** The trial court did not abuse its discretion in admitting State's Exhibit 1 as it was properly authenticated, was not precluded by the best evidence rule, was relevant, and was not unduly prejudicial.

**{¶ 42}** Bailey's assignment of error is overruled.

### III. Conclusion

**{¶ 43}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.