[Cite as *State v. Windsor*, 2026-Ohio-1075.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | |
|---|---|
| STATE OF OHIO : | C.A. No. 2025-CA-31 |
| Appellee : | |
| : | Trial Court Case No. 24-CR-788 |
| v. : | |
| : | (Criminal Appeal from Common Pleas |
| JOSEPH GLENN WINDSOR : | Court) |
| : | |
| Appellant : | **FINAL JUDGMENT ENTRY &** |
| : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 27, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

JENNIFER E. MARIETTA, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Joseph Glenn Windsor appeals from his conviction for attempted murder and discharging a firearm on or near prohibited premises. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} This case arises from a September 24, 2024 shooting, which occurred on Grand Avenue in Springfield. Following an investigation, Windsor was arrested. He was subsequently indicted on one count of attempted murder, one count of felonious assault, and one count of discharge of a firearm on or near prohibited premises. All of the counts had attached firearm specifications.

{¶ 3} The matter proceeded to a jury trial, during which the State of Ohio presented videotapes from surveillance cameras located at two houses on Grand Avenue. The first video, taken from a residence located at 141 Grand Avenue, depicted an individual on the front porch of the residence. The individual wore a red hoodie with the word "Faith" written in large white letters on the back. Below that is a large picture of what the State described as "the Blessed Virgin Mary."[1] The individual also wore jeans and black shoes.

{¶ 4} Another video, taken from a home located at 202 Grand Avenue, depicted footage of a red pickup truck traveling on Grand Avenue at the same time as the footage

---

1. None of the witnesses described the picture as the "Blessed Virgin Mary." However, the picture does appear to depict that religious iconography.

depicted in the first video. The truck pulled over to the curb and stopped. An individual, later identified as A.R., exited the truck and stood in the middle of the roadway looking back toward the area he had just traveled from. A few seconds later, a man dressed in a red hoodie, jeans, and black shoes entered the camera's frame and walked toward A.R. That individual pulled a firearm from his clothing, at which time A.R. turned and started to walk back toward his truck. The individual fired shots in the direction of A.R., who fell to the ground where he lay unmoving. The individual then stood over A.R. for a few seconds before retreating. A.R. was hit by a single bullet and sustained serious injuries. And a second bullet struck A.R.'s truck.

{¶ 5} The State presented the testimony of Joy Fagan, who testified that she was driving in the area at the time of the shooting when she observed an individual wearing a red hoodie running into an alley. She further testified that, when she turned onto Grand Avenue, she observed A.R. lying in the middle of the road. During Fagan's call to 911, A.R. can be heard stating that "Sosa shot me."

{¶ 6} Springfield Detective Justin Massie testified he is familiar with Windsor and that he recognized the name "Sosa" as an alias used by Windsor. Massie identified Windsor as the person on the videotapes.

{¶ 7} Tiffany Walter testified that she resided at 141 Grand Avenue along with her son and Windsor. Walter testified that she provided law enforcement with access to her surveillance camera videotape from the date of the shooting. According to Walter, Windsor is the individual seen in the footage wearing the red hoodie described above.

{¶ 8} The police conducted a search of Walter's residence where they discovered a red hoodie matching the one seen in the videos. The officers also found a box of .40 caliber Smith & Wesson bullets with eight of the bullets missing. According to the testimony at trial,

3

these bullets matched the three shell casings found on the roadway at the scene of the shooting, as well as a bullet recovered from the A.R.'s truck, and the bullet that was recovered from A.R.'s body during surgery.

**{¶ 9}** Following trial, the jury convicted Windsor on all the indicted charges, and the trial court sentenced him accordingly. Windsor appeals.

## II. Indictment

**{¶ 10}** For his first assignment of error, Windsor asserts the following:

THE INDICTMENT CONTAINED DEFECTS THAT VOID THE CONVICTION.

**{¶ 11}** Windsor contends the indictment contains defects that render it void.

**{¶ 12}** We begin by noting that Windsor did not raise an objection to the indictment until this appeal. "The Supreme Court of Ohio has held that when an objection to an indictment is not raised prior to trial as required by Crim. R. 12(C)(2), it is waived, unless it constitutes plain error." *State v. Hartman*, 2016-Ohio-2883, ¶ 66 (2d Dist.), citing *State v. Skatzes*, 2004-Ohio-6391, ¶ 26, citing *State v. Frazier*, 73 Ohio St.3d 323, 332 (1995). "Plain error is not found unless it can be concluded that but for the error, the outcome of the trial would have been different." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996). "'Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Id.,* quoting *State v. Haney*, 2006-Ohio-3899, ¶ 50 (12th Dist.), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶ 13}** With this standard in mind, we address the alleged defects in the indictment. "The Ohio Supreme Court has stated that an indictment serves two purposes: 1) it affords an accused with adequate notice and an opportunity to defend oneself by compelling the state to aver all material facts constituting the essential elements of the offense; and 2) it

4

protects an accused from future prosecutions for the same offense by identifying and defining the offense." *State v. Morris*, 2007-Ohio-3591, ¶ 19 (2d Dist.), citing *State v. Sellards*, 17 Ohio St.3d 169, 170 (1985). Thus, a valid indictment must contain words "sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7. This requirement may "be met by reciting the language of the criminal statute." *Morris* at ¶ 20, citing *State v. Murphy*, 65 Ohio St.3d 554, 583 (1992).

{¶ 14} Windsor first claims that the count for attempted murder is defective because it does not outline the elements of murder.

{¶ 15} The attempt statute, R.C. 2923.02, provides "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." It "is a general attempt statute which consolidates several specific attempt provisions in former law, and, with three exceptions, establishes an attempt to commit any offense as an offense in itself." *State v. Chatman*, 2023-Ohio-1590, ¶ 9 (2d Dist.). While "it may be necessary to examine the elements of the underlying substantive offense" of murder to determine whether an attempt violation has occurred, we have rejected the notion that a conviction for attempt is "derivative of and dependent upon" the underlying offense. *Id.* at 14-15. Instead, a violation of R.C. 2923.02(A) is a "distinct criminal offense." *Id.* at ¶ 15.

{¶ 16} Relevant hereto, Count I of the indictment alleges that Windsor "did purposely, and with sufficient culpability for commission of a violation of Section 2903.02(A) of the Revised Code, engage in conduct that, if successful, would constitute or result in a violation of Section 2903.02(A) of the Revised Code, to wit: Murder, in violation of Section

5

2923.02(A) of the Ohio Revised Code, and against the peace and dignity of the State of Ohio."

{¶ 17} The language of the indictment tracks the language of the attempt statute, sets forth all the elements of the offense of attempt as set forth in R.C. 2923.02(A), and sets forth the proper mens rea of "purposely" as required by the murder statute as well as the proper code section for murder, R.C. 2903.02(A). Thus, Windsor was provided notice of the nature of the offense alleged, and we find no error, let alone plain error, regarding this issue.

{¶ 18} Windsor next contends that the indictment for attempted murder should have included a reference to R.C. 2923.02(E)(1) which "elevates the offense level." In support, he cites R.C. 2945.75(A)(1) for the proposition that "when the presence of one or more additional elements makes an offense one of more serious degree[,] . . . [t]he . . . indictment . . . either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements."

{¶ 19} Windsor misunderstands the language of R.C. 2923.02(E)(1), which provides that "[w]hoever violates this section is guilty of an attempt to commit an offense." The statute goes on to set the level of the possible attempt offenses. With certain exceptions, "[a]n attempt to commit any other offense is an offense of the next lesser degree than the offense attempted." *Id.* One such exception is attempted murder, which the statute expressly establishes as "a felony of the first degree." *Id.* However, there are no additional elements to establish attempted murder as a first-degree felony. Therefore, the State did not err by failing to include a reference to R.C. 2923.02(E)(1) or to any non-existent elements.

{¶ 20} Finally, Windsor contends the indictment is fatally defective because it does not properly state the level of each offense and instead designates each as a "F1" or "F2"

6

"next to the statute title." He argues that while designating an offense as a F1 may be common within the legal profession, such a short form "is not ordinary language that is easily understandable to the common citizen."

{¶ 21} Windsor has not set forth a claim that this, or any other alleged defect, caused any errors at trial, nor has he claimed or demonstrated any prejudice arising therefrom. Thus, even if failing to use the language "Felony of the First-Degree," or "First Degree Felony" was error, it does not constitute plain error.

{¶ 22} The first assignment of error is overruled.

### III. Verdict Forms

{¶ 23} The second assignment of error states as follows:

THE VERDICT FORMS CONTAINED DEFECTS THAT VOID OR REDUCE

THE CONVICTIONS.

{¶ 24} Windsor argues the verdict forms were defective requiring either a reduction in the level of the offense or vacation of the conviction.

{¶ 25} Windsor did not object to the verdict forms to the trial court. Given this, we are limited to a plain error review.

{¶ 26} Windsor argues the verdict form for Count I, attempted murder, "fails to include the elements of murder, which are required for the offense of attempt to be elevated to a felony of the first degree." In support, he cites *State v. McDonald*, 2013-Ohio-5042, for the proposition that when a verdict form does not comply with R.C. 2945.75, the conviction must be reduced to a finding of "guilty of the least degree of the offense charged."

{¶ 27} R.C. 2945.75 provides, in pertinent part:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

7

. . .

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶ 28} The *McDonald* court discussed the statute in relation to the offense of failure to comply, proscribed in R.C. 2921.331, which can range in degree from a misdemeanor to a third-degree felony. *Id.* at ¶ 19. The court stated that "in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree[,]" the verdict form must comply with R.C. 2945.75. *Id*. at ¶ 17. Stated differently, R.C. 2945.75 applies when a criminal statute sets forth a range of violations of varying degrees and the penalties for the different degrees of the crime are not the same.

{¶ 29} As discussed in the first assignment of error, attempted murder does not have a range of violations, varying offense levels, nor varying punishment levels. Instead, it is clearly defined as a first-degree felony. Indeed, R.C. 2945.75 has no relevance to a conviction for attempted murder.

{¶ 30} Windsor also asserts that the verdict forms needed to include the statutory definition of the involved offense. There is no requirement that the statutory definition of an offense be included on the verdict form. "'To the contrary, the inclusion of statutory definitions on a verdict form "invites confusion and error."'" *State v. Harwell*, 2015-Ohio-2966, ¶ 59 (2d Dist.), quoting *State v. Martin*, 2009-Ohio-5303, ¶ 8 (2d Dist.), quoting *State v. Lampkin*, 116 Ohio App.3d 771, 774, fn. 1 (6th Dist. 1996).

{¶ 31} From our review, we find no error in the verdict forms. Accordingly, the second assignment of error is overruled.

8

## IV. Violent Offender Status

**{¶ 32}** The third assignment of error asserted by Windsor provides:

MR. WINDSOR IS NOT A VIOLENT OFFENDER AS DESCRIBED IN R.C. 2903.41(A)(1)(a)(b).

**{¶ 33}** Windsor claims the trial court erred in designating him as a violent offender.

**{¶ 34}** Ohio Senate Bill 231, known as Sierah's Law, was codified in 2019 by R.C. 2903.41 through 2903.44. The law creates a violent offender database for use by law enforcement. The statute creates the "legal presumption that offenders convicted of certain violent crimes must enroll in the database for a period of 10 years following their release from prison." *State v. Williams*, 2021-Ohio-1340, ¶ 128 (2d Dist.), citing R.C. 2903.41 through 2903.43. The definition of a "violent offender" set forth in R.C. 2903.41(A)(1)(a) and (b) includes a person convicted of murder as proscribed by R.C. 2903.02(A) and attempted murder as proscribed by R.C. 2923.02(A).

**{¶ 35}** Windsor does not dispute that a valid conviction for attempted murder would support a designation as a violent offender. Instead, he argues that, as set forth in his first and second assignments of error, his conviction for attempted murder must be vacated, thereby negating the basis for his violent offender designation.

**{¶ 36}** Because we have rejected Windsor's arguments regarding the validity of the indictment and verdict forms, and, as hereinafter discussed, his claim that the conviction is not supported by the evidence, the conviction for attempted murder is valid. Windsor meets the statutory definition of a violent offender. Accordingly, the trial court did not err in designating Windsor as a violent offender.

**{¶ 37}** The third assignment of error is overruled.

## V. Ineffective Assistance of Counsel/Authentication of Evidence

{¶ 38} The fourth assignment of error provides:

COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF EVIDENCE THAT WAS NOT PROPERLY AUTHENTICATED. IT WAS PLAIN ERROR TO ADMIT THE VIDEO EVIDENCE THAT WAS NOT PROPERLY AUTENTHICATED.

{¶ 39} In this assignment of error, Windsor claims that trial counsel did not render effective representation because he failed to object to the admission of the videotape of the shooting and the videotape of the person seen on Walter's front porch. In support, he argues the footage submitted by the State was not properly authenticated and, as such, was improperly admitted into evidence.

{¶ 40} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at 687; *Bradley* at paragraph two of the syllabus. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

{¶ 41} As Windsor correctly notes, trial counsel did not object to the admission of the video evidence presented by the State. In order to determine whether the failure to do so

10

constitutes ineffective assistance of counsel, we must determine whether the admission of the videos was improper.

**{¶ 42}** A trial court has broad discretion regarding the admission of evidence, "'and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.'" *State v. Montgomery*, 2020-Ohio-513, ¶ 16 (2d Dist.), quoting *State v. Noling*, 2002-Ohio-7044, ¶ 43. The issue then is whether the trial court's admission of the contested evidence was unreasonable, arbitrary, or unconscionable. *Id.*

**{¶ 43}** This court has previously discussed the authentication of videographic evidence in *State v. Biswa*, 2022-Ohio-3156 (2d Dist.), wherein we stated:

> Authentication is governed by Evid.R. 901. "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12; *State v. Hatfield*, 2d Dist. Montgomery No. 28990, 2022-Ohio-148, ¶ 84. "The threshold standard for authenticating evidence is low, meaning that the party seeking to introduce the disputed evidence need only demonstrate 'a reasonable likelihood that the evidence is authentic.'" (Citations omitted.) *State v. Shropshire*, 2d Dist. Montgomery No. 28659, 2020-Ohio-6853, ¶ 11.

> Evid.R. 901(B) provides examples of several ways that the authentication requirement may be satisfied. The most common method is oral testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *E.g.*, *State v. Quarles*, 2015-Ohio-3050, 35 N.E.3d 616, ¶ 34 (2d Dist.); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 30.

11

A video is treated like a photograph under Ohio's evidentiary rules. See Evid.R. 1001(2). Photographic evidence is admissible under two different theories. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 150; *State v. Davis*, 2d Dist. Montgomery No. 28923, 2021-Ohio-1833, ¶ 20. Under the "pictorial testimony" theory, the photographic evidence is "merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation." *Id.*, quoting *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129, 573 N.E.2d 98 (1991). Alternatively, under the "silent witness" theory, the photographic evidence is a "silent witness" which "speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." *Id.*, quoting *Midland Steel* at 130.

*Id*. at ¶ 27-29.

{¶ 44} During trial, Walter testified that the video of Windsor standing on her porch moments before the shooting was a true and accurate depiction of the footage recorded on her surveillance camera and subsequently provided to Detective Massie. Walter also testified that she recognized the individual in the red hoodie as Windsor, a person with whom she was intimately acquainted.

{¶ 45} With regard to the video evidence taken from the residence at 202 Grand Avenue, Springfield Detective Ronald Jordan testified that he had extensive experience with such surveillance systems and that he was able to collect the footage of the shooting because of his familiarity with home surveillance systems. He also testified that he

collected the video with the permission of the homeowner. Finally, Jordan testified that the video was an accurate and true representation of the video he collected from that address.

{¶ 46} Based upon the record before us, we find no merit in the claim that these videotapes were not properly authenticated prior to their admission into evidence. It then follows that we find no merit in the claim of ineffective assistance of counsel as lawyers cannot be faulted for failing to take actions that would be futile. *See State v. Diamond*, 2018-Ohio-3287, ¶ 67 (2d Dist.); *State v. Armstrong*, 2016-Ohio-2627, ¶ 30 (8th Dist.).

{¶ 47} The fourth assignment of error is overruled.

### VI. Sufficiency and Manifest Weight of the Evidence

{¶ 48} The fifth and sixth assignments of error state as follows:

THERE WAS NOT SUFFICIENT CREDIBLE EVIDENCE TO SUBMIT THE CASE TO THE JURY.

THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 49} Windsor claims the State failed to present evidence sufficient to support his convictions and that the convictions are otherwise against the manifest weight of the evidence.

{¶ 50} "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the

13

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*

{¶ 51} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 52} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.); *accord State v. Winbush*, 2017-Ohio-696, ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶ 53} Windsor was convicted of attempted murder in violation of R.C. 2923.02(A). That statute provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Murder is proscribed by R.C. 2903.02. As relevant hereto, that statute states that "[n]o person shall purposely cause the death of another." R.C. 2903.02(A). Windsor was also convicted of

felonious assault in violation of R.C. 2903.11(A)(2) which prohibits a person from knowingly causing physical harm to another.

{¶ 54} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id*. "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id*.

{¶ 55} Finally, Windsor was convicted of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), which prohibits the discharge of a firearm "upon or over a public road or highway." The offense is a strict liability offense. *State v. James*, 2015-Ohio-4987, ¶ 33 (8th Dist.); *accord State v. Johnson*, 2022-Ohio-4629, ¶ 24-25 (2d Dist.).

{¶ 56} The State presented evidence that an individual was standing on the front porch of Walter's residence located at 141 Grand Avenue a few moments prior to the shooting. That person was wearing a distinctive red hoodie, jeans and black shoes. Walter, with whom Windsor lived and was in a relationship with, testified she recognized the individual as Windsor. The State also presented evidence that A.R. was standing in the center of the roadway when Windsor approached and pulled out a handgun and fired four

15

times. The State presented evidence that A.R. was struck by a bullet and that he required surgery for his injury. The State also presented evidence that one bullet hit A.R.'s truck which was parked a few feet to the front and side of where the victim was standing. There was testimony presented that A.R. identified his shooter as "Sosa." There was also testimony that Detective Massie, who was familiar with Windsor, recognized "Sosa" as an alias used by Windsor. The State further presented evidence that a search of the residence where Windsor resided with Walter uncovered the red hoodie, jeans, black shoes, and a box of ammunition. There was testimony that the box of ammunition matched the bullet casings found on the scene as well as the bullet found in the A.R.'s truck and the bullet recovered from A.R.'s body during surgery.

{¶ 57} From our review of this record, we conclude the State presented sufficient, competent, credible evidence upon which a reasonable juror could rely in finding Windsor guilty on all three charges. We further conclude that the evidence and testimony is not otherwise against the manifest weight of the evidence.

{¶ 58} The fifth and sixth assignments of error are overruled.

### VII. Allied Offenses and Merger

{¶ 59} Windsor's seventh assignment of error states as follows:

THE SENTENCE IMPOSED IS CONTRARY TO LAW, BECAUSE ALL OF

THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT SUBJECT

TO MERGER.

{¶ 60} Windsor claims his "conviction for discharging a firearm over a public roadway, with serious physical harm, is an allied offense of similar import to the felonious assault and attempted murder convictions." He claims the trial court erred by failing to merge the three convictions.

16

{¶ 61} The trial court merged the convictions for attempted murder and felonious assault, and the State elected to proceed to sentencing on attempted murder. The only issue before us is whether discharging a firearm on public premises is an allied offense of attempted murder.

{¶ 62} When a defendant's conduct supports multiple offenses, sentencing courts apply the allied offense analysis in R.C. 2941.25 to determine whether the offenses merge. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 63} "[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *State v. Ruff*, 2015-Ohio-995, ¶ 31. "An affirmative answer to any of the above will permit separate convictions." *Id.* We review the trial court's merger ruling de novo. *State v. Barnes*, 2020-Ohio-4150, ¶ 10 (2d Dist.).

17

**{¶ 64}** The Supreme Court of Ohio has held that "allied offenses are not offenses of similar import if the offender's conduct constitutes offenses against different victims or if the harm that results from each offense is separate and identifiable." *State v. Rogers*, 2015-Ohio-2459, ¶ 4, citing *Ruff*, paragraph two of the syllabus. In accord with this holding, this court has consistently held that the offense of discharging a firearm on or near a prohibited premise is of dissimilar import to murder and does not merge. *E.g., State v. Thompson-Rivers*, 2025-Ohio-5067, ¶ 37 (2d Dist.). This holding is based upon the finding that the offenses involve separate victims; namely the person who is physically harmed and the public. *State v. Thompson*, 2025-Ohio-2168, ¶ 74 (2d Dist.); *State v. James*, 2015-Ohio-4987, ¶ 33-34; *State v. Coleman*, 2021-Ohio-968, ¶ 27-28. Likewise, in this case, A.R. was the victim of the attempted murder, and the public at large was the victim of the danger posed by firing a gun on or near a roadway. *State v. Rapp*, 2020-Ohio-824, ¶ 26 (2d Dist.).

**{¶ 65}** We conclude the trial court did not err in not merging the conviction for discharging a firearm on or near prohibited premises with the conviction for attempted murder. Accordingly, the seventh assignment of error is overruled.

### VIII. Conclusion

**{¶ 66}** All of Windsor's assignments of error being overruled, the judgment of the Clark County Court of Common Pleas is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.